❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A ZTE Smartphone and an Apple Iphone currently in<br>evidence at the FBI Field Office, more fully described<br>in Attachment A. | )<br>)<br>)  Case No.   21 -880M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____June 24, 2021_____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      June 10, 2021 @ 3:26pm          _____
                                                                                                    *Judge's signature*

City and state:   Milwaukee, WI          Honorable Nancy Joseph, Magistrate Court Judge
                                                                             *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

a. A ZTE smartphone currently in FBI evidence, Evidence Item 192B-MW-3434772-1B1.

b. An Apple iPhone currently in FBI evidence, Evidence Item 192B-MW-3434772-1B2.

The Devices are currently in evidence at the FBI Milwaukee Field Office.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.     All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery), 924(c) (use and brandishing of a firearm during a crime of violence) and 2, and 371 (conspiracy to commit Hobbs Act robbery); Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute methamphetamine) and 856(a)(1) (maintaining drug-involved premises); and Title 18, United States Code, 924(c) (possession of a firearm in furtherance of drug trafficking) involving Antonio Sampson (DOB XX/XX/1985), DeQuinn Ford (DOB XX/XX/1990), or Daninelle Jones (DOB XX/XX/1992) or any other subject, and that relate to the aforementioned armed robberies, drug trafficking, or drug-involved premises, stored on the Devices, to include:

   a.   any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

   b.   any information recording any targets' schedule or travel;

   c.   any web search information related to the offenses described above;

   d.   photographs of locations evidencing pre-robbery, drug trafficking, or drug-involved premises surveillance or vehicles or people related to the offenses described above;

   e.   any information related to the proceeds from the robberies, drug trafficking, or drug-involved premises described above;

f. any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

Case 2:21-mj-00880-NJ   Filed 06/10/21   Page 5 of 28   Document 1

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A ZTE Smartphone and an Apple Iphone currently in<br>evidence at the FBI Field Office, more fully described in<br>Attachment A. | )<br>)<br>)<br>)<br>)<br>)    Case No. 21-880M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attached Affidavit | See Attached Affidavit |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mary D. Davidson, Special Agent - FBI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ June 10, 2021 _____

*Judge's signature*

City and state: _____ Milwaukee, WI _____

Honorable Nancy Joseph, Magistrate Court Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Mary Davidson, being first duly sworn, state the following is true and correct to the best of my knowledge and belief:

## I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since May 2019. Since October 2019, I have been assigned to the Milwaukee FBI Violent Crime Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have participated in the investigation of numerous violent crimes, including armed bank robberies, armed motor vehicle robberies, and armed commercial robbery investigations in violation of Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and 2, and other related offenses. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, interviews, DNA collection, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

2. I have conducted and/or assisted with investigations of violent crime violations in conjunction with agents and officers from other jurisdictions, and have received training from these agents and officers in conducting these investigations. I have also conducted and/or assisted with investigations that have led to the arrest of persons for violations of law dealing with commercial robberies.

3.     Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software which are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

4.     To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

5.     This affidavit is based upon my personal knowledge, training and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  This affidavit is also based upon my review of police reports, official records, citizen witnesses' statements, consent searches, recorded statements, law enforcement surveillance, surveillance video, social media, court records, telephone records, and public records which I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

6.     Based on the investigation to date, I submit that there is probable cause to believe that Antonio Sampson (DOB XX/XX/1985), DeQuinn Ford (DOB XX/XX/1990), and Daninelle Jones (DOB XX/XX/1992) conspired with one another and others to commit and committed a series of armed robberies of auto parts stores in Milwaukee, Wisconsin, between February 24,

2

2021, and May 10, 2021, in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (use and brandishing of a firearm during a crime of violence) and 2 and 371 (conspiracy to commit Hobbs Act robbery). I further submit that there is probable cause to believe that on or about May 14, 2021, DeQuinn Ford committed violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute methamphetamine) and Title 18, United States Code, 924(c) (possession of a firearm in furtherance of drug trafficking). Further, I submit that there is probable cause to believe that on or about May 14, 2021, Daninelle Jones committed violations of Title 21, United States Code, Sections 856(a)(1) (maintaining drug-involved premises).

7.      Because this affidavit is submitted for the limited purpose of a obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.  I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the warrant.

## II.     IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      This affidavit is submitted in support of an application for a search warrant for the following portable electronic devices ("Devices"), which are currently in evidence at the FBI Milwaukee Field Office, for evidence of the users' possible involvements in the armed robberies and drug trafficking described in detail below:

   a.   A ZTE smartphone currently in FBI evidence, Evidence Item 192B-MW-3434772-1B1.

   b.   An Apple iPhone currently in FBI evidence, Evidence Item 192B-MW-3434772-1B2.

9.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

3

## III. PROBABLE CAUSE

10.     I am involved in the investigation of a series of armed robberies of auto parts stores in Milwaukee, Wisconsin, between at least February 24, 2021, and May 10, 2021.  All of the auto parts stores included in this affidavit are businesses involved in interstate commerce, and the below-described robberies affected interstate commerce.

**Armed Robbery of Advance Auto Parts, North Teutonia Avenue, Milwaukee – February 24, 2021**

11.     On February 24, 2021, at approximately 8:58 p.m., an armed robbery occurred at the Advance Auto Parts located at 4810 North Teutonia Avenue, Milwaukee, Wisconsin. One unidentified male subject entered the store, picked up fuses from an aisle, and went to the cash register with the fuses. The victim employee at the register began to ring up the fuses when the subject stated, "I hate to do this to another black man, but I need the money." The subject then drew a silver handgun from his right pocket and demanded money from the register. The victim employee complied and gave the subject approximately $1,400 in U.S. currency. The subject then fled the store.

12.     The subject was described as a black male, 20-25 years old, 5'10" in height, 175 pounds, and armed with a silver handgun.

**Armed Robbery of AutoZone, North 76th Street, Milwaukee – March 11, 2021**

13.     On March 11, 2021, at approximately 6:55 p.m., an armed robbery occurred at AutoZone located at 7377 North 76th Street, Milwaukee, Wisconsin. Two unidentified male subjects entered the business and demanded and obtained money from the safe. Subject #1 asked where the safe was located and held a silver over black handgun in both of his hands, pointed the gun at a victim employee's chest, and cocked the gun. The victim employee walked the subjects to the location of the safe and observed another victim employee counting down the money.

Subject #1 stated, "We want everything," and told the victim employees that they only came for the money belonging to the store and that they were not going to take anything belonging to the employees. Subject #2 took money from the safe and placed it into a paper McDonalds bag. Subject #1 then removed the change from the safe. Subject #1 told the victim employees, "Thank you for your cooperation," and the subjects fled from the business. The subjects obtained approximately $2,940 in U.S. currency.

14. Subject #1 was described as a black male, approximately 28-30 years old, approximately 5'07," 140 pounds, medium build, dark skin complexion, and armed with a silver over black handgun. According to surveillance video, Subject #1 held the handgun primarily in his left hand. Subject #2 was described as a black male, 30-33 years old, approximately 6'01," 175 pounds, medium build, and medium-brown skin complexion, and carrying a brown McDonald's bag.

**Armed Robbery of AutoZone, West North Avenue, Milwaukee – April 1, 2021**

15. On April 1, 2021, at approximately 8:37 p.m., an armed robbery occurred at the AutoZone located at 2475 West North Avenue, Milwaukee, Wisconsin. Two subjects entered the business and demanded and obtained money from the safe. The subjects stated multiple times to the victim employees, "We are not here to hurt you, we just want the money, the money is insured." Subject #1 brandished a firearm during the robbery and pointed it at the victim employees. Subject #1 threw a black and red draw-string backpack at one of the victim employees and demanded she place the money in the bag. The victim employee complied, however, Subject #1 told her she was moving too slowly, so he took the backpack from her and took money from the safe and put it into the backpack. After obtaining the money, the subjects fled from the business. The subjects obtained approximately $1,800 in U.S. currency.

5

16.     Subject #1 was described as a black male, approximately 28-32 years old, approximately 5'08" in height, approximately 140 pounds, medium build, and medium-brown skin complexion, and was armed with a black revolver with a brown handle in his left hand and the gun was cocked.   Subject #2 was described as a black male, approximately 28-32 years old, approximately 5'04" in height, approximately 140 pounds, medium build, and medium-brown skin complexion.

**Armed Robbery of AutoZone, West North Avenue, Milwaukee – April 23, 2021**

17.     On April 23, 2021, at approximately 8:22 p.m., an armed robbery occurred at the AutoZone located at 2475 West North Avenue, Milwaukee, Wisconsin, which is the same location that was robbed on April 1, 2021. One unidentified subject with a gun entered the business and demanded and obtained money from the safe. The subject stated, "I need everything in the back. I don't need anything from you. Take me to the safe." One of the victim employees took the subject to the back area where the safe was located. The subject handed a black plastic bag to one of the victim employees and instructed the employee to remove the money from the safe and to place it into the plastic bag.  The employee complied and emptied out the money tills into the plastic bags. After obtaining the money, the subject fled from the business.  The subject obtained approximately $909 in United States Currency.

18.     The subject was described as a black male, in his 30's, 5'08"-5'10" in height, average build, dark skin complexion, and armed with a black handgun in his left hand.

**Armed Robbery of AutoZone, West North Avenue, Milwaukee – April 30, 2021**

19.     On April 30, 2021, at approximately 8:15 p.m., an armed robbery occurred at the AutoZone located at 2475 West North Avenue, Milwaukee, Wisconsin, which is the same location that was robbed on April 1, 2021, and April 23, 2021. Two unidentified subjects entered the business and demanded and obtained money from the safe.  Subject #1 entered the business holding

6

a black handgun in his left hand while Subject #2 stayed by the entrance door, acting as a lookout. Subject #1 approached the victim employees at the counter and stated, "All right come on." Subject #1 and the employees went to the rear room where the safe was located. Subject #1 had a black backpack and asked one of the victim employees to fill the backpack with cash from the safe. The victim employee told Subject #1 he could fill the bag himself. Subject #1 filled the bag with the money from the safe, to include the coins. The subjects fled westbound out of the store. One of the victim employees observed the subjects meet up with a third subject, and all three subjects ran westbound. The subjects obtained approximately $1,503.80 in U.S. currency.

20.    Subject #1 was described as a black male, approximately 35 years old, approximately 5'08" in height, thin build, and armed with a black semi-automatic handgun in his left hand. Subject #2 was described as a black, male, in his 40's, approximately 5'08"-5'10" in height, approximately 180 pounds, medium build, and bald, wearing blue pants.

**Armed Robbery of AutoZone, North 76th Street, Milwaukee – May 6, 2021**

21.    On May 6, 2021, at approximately 8:48 p.m., an armed robbery occurred at the AutoZone located at 7377 North 76th Street, Milwaukee, Wisconsin. One unidentified subject entered the business and demanded money from the cash register and safe. The subject had an all-black handgun in his left hand, approached the victim employees standing at the cash register, pointed the gun at them, and demanded money from the cash register. The subject then stated, "Let's go to the safe." One of the employees took the subject to the back room where the safe was located, however, no money was obtained from the safe because it was on a time lock. The subject then went back to the cash register and obtained approximately $579 in U.S. currency from the cash register and fled from the store.

22.    The subject was described as a black male, approximately 25-30 years old, 5'08" to 5'10" in height, 150-160 pounds, medium build, short "nappy" hair, medium to dark

7

complexion, wearing a blue facemask, black hooded sweatshirt with hood up, blue oversized jeans, black backpack, and armed with a large, black handgun.

**Armed Robbery of Advance Auto Parts, West National Avenue, Milwaukee – May 10, 2021**

23.     On May 10, 2021, at approximately 8:36 p.m., an armed robbery occurred at the Advance Auto Parts located at 1920 West National Avenue, in Milwaukee, Wisconsin. Immediately upon entering the store, the subject went behind the counter and brandished a firearm. The subject instructed Employee #1 to open the cash register while pointing the firearm at Employee #1. Employee #1 responded that he was unable to. At some point the subject told the victim that he would shoot him if he didn't stop moving around. The subject then ordered another employee to open the register and safe. The subject removed money from the registers, and had the employee remove the money from the safe and put it in an Advance Auto Parts bag. The subject fled the store on foot. The robbery was captured on surveillance footage.

24.     A Milwaukee County Transit System (MCTS) bus driving down National Avenue just before the robbery had surveillance footage that captured the robbery subject exit a vehicle immediately before the robbery. The vehicle was a light brown or gold 2003 Chevy Impala (hereinafter referred to as Impala), with Wisconsin license plate ALA-5187. This vehicle is registered to Daninelle Jones (hereinafter Jones) with a registered address of 2477 West Fond du Lac Avenue, Milwaukee, Wisconsin. The footage shows the suspect exit a right-side passenger seat of the suspect vehicle, while the vehicle is stopped at the red light on National Avenue. The suspect is wearing the exact same clothing as the robber. After exiting the suspect vehicle, the suspect crossed National Avenue and walked into the entrance doors of Advance Auto Parts to commit the robbery. The suspect's face is visible in bus footage and is consistent with Antonio Sampson (hereinafter Sampson) (XX/XX/1985).

8

25. The victim employees described the suspect as a black male, 35-40 years old, 5'7" in height, 160 pounds, bald, scruffy beard, wearing a gray hoodie with black strings, dark blue (almost black) jeans, red shoes, and armed with a black and silver firearm semi-automatic firearm held in the suspect's left hand.

26. Jones has at least one child in common with Eddie Perkins-Bradford (DOB: XX/XX/1992). Jones and Perkins-Bradford have a paternity acknowledgement case with Milwaukee County (2015FA004484). In 2019, Perkins-Bradford had multiple Milwaukee Police Department (MPD) CAD calls involving Sampson. Upon searching MPD records, Sampson was identified as a black male who was bald and in his 30s. Sampson's Wisconsin identification card lists him as a black male, height 5'09," and 165 pounds.

27. The Facebook page for Sampson was identified with display name "Antonio Sampson." Sampson's profile was "friends" with Facebook display name "Otw Rob Ghee" which had multiple photographs of Sampson. Photographs of Sampson from March 2021 depicted him wearing black and white Jordan tennis shoes consistent with those worn in multiple robberies and red shoes consistent with the shoes worn in the robbery at the Advance Auto Parts located at 1920 West National Avenue, in Milwaukee, Wisconsin on May 10, 2021.

28. The Facebook page for Jones was identified with display name "Danielletoshort Jones." In Jones' "Life Events" on her Facebook page, she is listed as in a relationship with "Dequinn Ford" since February 25, 2021. Ford's Facebook display name is "Dequinn Ford (Cash Mitch Da Demon)" with a username of cash.mitch.9.

29. On May 12, 2021, surveillance was conducted on the Impala. DeQuinn Ford (hereinafter Ford) was identified as driving the Impala during the day. During surveillance, Ford was observed entering the Citgo gas station located at 1530 West State St, Milwaukee, WI 53233. Surveillance video was obtained from the gas station which depicts Ford inside of the gas station.

9

30.     On May 14, 2021, MPD responded to the address 2477 West Fond du Lac Avenue, Milwaukee, Wisconsin for a child neglect call. While MPD was at the residence, DeQuinn Ford arrived at the residence. Ford was arrested by MPD for the child neglect. During the search incident to arrest, a silver over black semi-automatic handgun was located on Ford.  Shortly after Ford's arrest, Jones also arrived at the residence while MPD was still on scene. Jones and Ford share the residence at 2477 West Fond du Lac Avenue, Milwaukee, Wisconsin. Jones provided consent to search the residence and Impala. The following are some of the items recovered from Ford, the residence, and Impala:

    a.  Silver over black SCCY Industries CPX-2 9mm Luger semi-automatic handgun, SN: C074963 located on Ford;

    b.  One black colored box, with SCCY firearms label, SN: C027683 located under living room couch in the residence;

    c.  Two (2) black and brown leather holsters located behind living room couch and under living room couch cushion in the residence;

    d.  14 unfired cartridges, 9mm luger, recovered from loaded magazine inside the black Adidas drawstring bag located on front passenger seat of the Impala;

    e.  Two (2) unfired cartridges, 9mm luger, recovered from underneath the living room couch in the residence;

    f.  Six (6) unfired cartridges, 9mm luger, recovered from a loaded compact size magazine located underneath the living room couch in the residence;

    g.  32 unfired cartridges, 9mm luger, recovered from a loaded extended magazine located underneath the living room couch in the residence;

    h.  15 unfired cartridges, 9mm luger, recovered from loaded semi-automatic handgun (SN: C074963) located on Ford;

i.  28 unfired cartridges, 9mm luger, located in ammunition box recovered from behind living room couch in the residence;

j.  One (1) ProMag brand, 9mm luger magazine recovered from inside the black Adidas drawstring bag located on front passenger seat of the Impala;

k.  One (1) SCCY brand, 9mm luger magazine recovered from behind the living room couch in the residence;

l.  One (1) SCCY brand, 9mm luger magazine recovered from the end table drawer located in the living room of the residence;

m.  One (1) ProMag brand, 9mm luger extended magazine recovered from underneath the living room couch in the residence;

n.  17 whole, 1 half, and 1 quarter multi-colored, multi-shaped pills weighing 3.91 grams and testing positive for methamphetamines located in a clear knotted sandwich bag inside of the black Adidas drawstring bag on top of the front passenger seat of the Impala;

o.  61 whole, 1 half, and 3 quarter multi-colored, multi-shaped pills weighing 24.63 grams and testing positive for methamphetamines located in a clear knotted sandwich bag inside of a drawer of an end table located in the living room of the residence;

p.  Black digital scale with unknown white residence on metal weight plate recovered from behind the living room couch in the residence;

q.  Black Adidas drawstring bag recovered from front passenger seat of the Impala;

r.  "That's Smart" brand, clear, plastic sandwich bag, 150 count, in carboard box located in the end table storage area in the living room of the residence.

11

31.     During a custodial interview with Ford, Ford admitted to driving the Impala to the Advance Auto parts store located at 1920 West National Avenue, Milwaukee, Wisconsin on May 10, 2021. Ford stated that Sampson, whom he referred to as "Tone," wanted to rob a store and that Sampson picked that store to rob. Sampson told him that he had already robbed several auto parts stores, and he did not want to keep going to the same store because it was "hot." Ford positively identified Sampson in a booking photograph as the individual who committed the robbery on May 10, 2021. After the robbery, Ford stated that Sampson gave him and Jones approximately $300 for driving him to do the robbery. Ford stated that the gun used by Sampson in the robbery belonged to Jones. When asked about the firearm found on Ford during his arrest on May 14, 2021, Ford stated that was not the firearm used during the May 10, 2021 robbery. He stated that he and Jones both purchased guns sometime between January and March 2021, and the gun used by Sampson during the robbery on May 10, 2021 was Jones'. Further, Ford stated that he was not involved in any other robberies with Sampson. Regarding the narcotics found at the 2477 West Fond du Lac Avenue, Milwaukee, Wisconsin residence, Ford stated that he takes the pills, and also sells the pills when Jones needs money. He stated that he does not sell all the time.

32.     During a custodial interview with Jones, Jones stated that she and Ford purchased two guns together earlier in 2021. Both of the firearms purchased were silver over black 9mm handguns. Jones stated they purchased the guns for protection due to the area they lived in. Jones also stated that Ford normally drives the Impala because he has a driver's license, and she does not. Jones stated that no other males drive her Impala. When shown a still photograph from the surveillance footage from May 12, 2021 at the Citgo gas station located at 1530 West State Street, Milwaukee, Wisconsin 53233, Jones positively identified Ford in the photograph.

33.     Jones initially stated that on May 10, 2021, she did not go to work and stayed at home all day. Upon further questioning, Jones admitted to leaving the residence and being in the

12

front seat of the Impala during the armed robbery on May 10, 2021. Jones positively identified her vehicle and Sampson in a still photograph from surveillance footage from the MCTS bus video from May 10, 2021. Further, Jones stated that Ford was driving the Impala and Jones was seated in the front passenger seat. Jones stated that Sampson came to her residence located at 2477 West Fond du Lac Avenue, Milwaukee, Wisconsin, and told her and Ford that he wanted to rob a store. Sampson told her that he had been doing robberies for the past five days, and that he robbed the auto store by her house five different times. Jones stated before they left her house, she gave Sampson her silver over black 9mm semi-automatic handgun to do the robbery. She stated that Sampson never gave the gun back to her, and she thinks he still has it.

34.     After the robbery, she, Ford, and Sampson went back to her residence, and Sampson was picked up by someone and left. Jones received some money from Sampson in exchange for her help in the robbery, but she was unsure how much. Jones stated that this was the only offense she was involved with, and she did not commit any other armed robbery offenses with Sampson. Regarding the narcotics recovered at the 2477 West Fond du Lac Avenue, Milwaukee, Wisconsin residence, Jones stated that Ford sells ecstasy out of her house. She stated that Ford sometimes will give her money for the sale of the drugs, but he does not constantly sell drugs.

35.     On May 17, 2021, Sampson was observed during surveillance at the address of 3608 North 9th Street, Milwaukee, Wisconsin. Following him being observed, MPD responded to the residence and physically located and arrested Sampson in the residence.  MPD obtained a search warrant for the lower unit of 3608 North 9th Street, Milwaukee, Wisconsin and located the following items:

      a.   Black and white shoes consistent with those worn in several of the robberies;

      b.   Red shoes consistent with those worn during the May 10, 2021 armed robbery;

c.  Gray sweatshirt with black strings consistent with that worn during the May 10, 2021 armed robbery.

36.   During a custodial interview with Sampson, Sampson admitted to committing the armed robberies at AutoZone located at 2475 West North Avenue, Milwaukee on April 23, 2021; AutoZone located at 2477 West North Avenue, Milwaukee on April 30, 2021; and Advance Auto Parts located at 1920 West National Avenue, Milwaukee on May 10, 2021. Sampson denied involvement with the other robberies. Sampson identified DeQuinn Ford, who he knows as "Cash," to be involved in the April 23, 2021; April 30, 2021; and May 10, 2021 armed robberies. Additionally, Sampson stated that Ford told him that he has committed several armed robberies of AutoZones in Illinois and Milwaukee in the last couple of months. Sampson stated it was Ford's idea to rob the auto-parts stores. Sampson said that Ford told him what to do and the things to say when he went into the stores.

37.   Sampson stated that for the April 23, 2021 robbery, Ford drove him near a school located at 27th and North Avenue. Ford stayed in the vehicle, and Sampson went into the AutoZone located at 25th Street and North Avenue and committed the armed robbery. Sampson stated he was armed with a real, all-black firearm that he bought from his cousin. Sampson stated that for the April 30, 2021 robbery, Sampson, Ford, and "Dre" committed the robbery. Ford was the driver, and he and Dre went into the AutoZone. Sampson was armed with the same firearm he bought from his cousin. Sampson did not know Dre's real name, but is someone he knows from Milwaukee. While Sampson was on his way to the 2477 West Fond du Lac Avenue address to meet Ford to do the robbery, Sampson ran into Dre. Sampson told him about the planned robbery, and Dre wanted to come with them to make some money.

38.   Regarding the May 10, 2021 robbery, Sampson stated that Ford drove him and Jones to the Advance Auto Parts in the Impala. Jones gave Sampson her silver over black firearm

14

to use in the robbery. Sampson was in the backseat of the Impala, got out of the vehicle, crossed the street, and committed the robbery. Ford and Jones parked around the corner. Sampson fled back to the Impala following the robbery, and the three of them drove back to the 2477 West Fond du Lac Avenue residence. Sampson stated the firearms were loaded during the robberies, however, he never fired the firearms.

39.    On May 20, 2021, at approximately 6:45 p.m., the Milwaukee Police Department (MPD) responded to McDonalds located at 5739 West Silver Spring Drive, Milwaukee, Wisconsin 53218 for a child abuse or neglect call. Jones was working at the McDonalds at that time and witnessed the incident. At the time of the incident, Jones had a federal arrest warrant (21-M-402 (SCD)) for armed robbery and was taken into custody by MPD.

40.    On May 21, 2021, FBI Agents arrested Jones at the Milwaukee Police Department located at 749 West State Street, Milwaukee, Wisconsin and transported her to the United States Marshals Service located at 511 East Wisconsin Avenue, Milwaukee, Wisconsin. Located in Jones' jail property at the time of the arrest was a ZTE Smartphone with a maroon case. The ZTE Smartphone was seized and placed into FBI Evidence under Evidence Item 192B-MW-3434772-1B1.

41.    On May 28, 2021, FBI Agents and Task Force Officers arrested Ford at the residence 2477 West Fond du Lac Avenue, Milwaukee, Wisconsin pursuant to a Federal arrest warrant (21-M-403 (SCD)). Located on the living room couch was an Apple iPhone in a black, brown, and gold-colored case. Ford identified the Apple iPhone as his "old phone." The cellular telephone was seized and placed on FBI evidence under Evidence Item 192B-MW-3434772-1B2.

## IV. TECHNICAL TERMS

42.     Based on my training and experience, I use the following technical terms to convey the following meanings:

43.     Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

44.     Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

16

45.     Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

46.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

47.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage

17

media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

48.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

49.     Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that the electronic Devices described above have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**V. ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

50.     Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices.  This information can sometimes be recovered with forensics tools.

18

51.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

52.     *Nature of examination*.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

53.     *Manner of execution*.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## III.     CONCLUSION

54.     Based on the facts contained within this affidavit, I believe that probable cause exists to search the Devices, which are more particularly described in Attachment A, and which are currently located in evidence at the FBI Milwaukee Field Office, for evidence of the aforementioned armed robberies and drug trafficking, including but not limited to the information contained in Attachment B.

## <u>ATTACHMENT A</u>

### Property to Be Searched

a.  A ZTE smartphone currently in FBI evidence, Evidence Item 192B-MW-3434772-1B1.

b.  An Apple iPhone currently in FBI evidence, Evidence Item 192B-MW-3434772-1B2.

The Devices are currently in evidence at the FBI Milwaukee Field Office.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery), 924(c) (use and brandishing of a firearm during a crime of violence) and 2, and 371 (conspiracy to commit Hobbs Act robbery); Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute methamphetamine) and 856(a)(1) (maintaining drug-involved premises); and Title 18, United States Code, 924(c) (possession of a firearm in furtherance of drug trafficking) involving Antonio Sampson (DOB XX/XX/1985), DeQuinn Ford (DOB XX/XX/1990), or Daninelle Jones (DOB XX/XX/1992) or any other subject, and that relate to the aforementioned armed robberies, drug trafficking, or drug-involved premises, stored on the Devices, to include:

     a.   any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

     b.   any information recording any targets' schedule or travel;

     c.   any web search information related to the offenses described above;

     d.   photographs of locations evidencing pre-robbery, drug trafficking, or drug-involved premises surveillance or vehicles or people related to the offenses described above;

     e.   any information related to the proceeds from the robberies, drug trafficking, or drug-involved premises described above;

f. any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.